The **RESERVES MANAGEMENT COR-PORATION, n/k/a Reserves Management, LLC, Plaintiff Below, Appellant,**

v.

**R.T. PROPERTIES, LLC, Mountain Range, LLC, a/k/a Mountain Rance, LLC, Fountain, LLC, Waterscape, LLC, and Wind Chop, LLC, Defendants Below, Appellees.**

**No. 164, 2013.**

Supreme Court of Delaware.

Submitted: Sept. 4, 2013.

Decided: Nov. 15, 2013.

Adam Hiller, Esquire (argued), Hiller & Arban, LLC, Wilmington, Delaware, for Appellant.

Timothy S. Martin (argued) and Marc S. Casarino, Esquires, White and Williams LLP, Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice:

This case involves a dispute between two developers over the payment of property assessments allegedly due under certain restrictive covenants. The plaintiff-below, The Reserves Management, LLC ("Reserves"), appeals from two Superior Court rulings granting summary judgment in favor of the defendants-below, R.T. Properties, LLC, Mountain Range, LLC, Fountain, LLC, Waterscape, LLC, and Wind Chop, LLC. We affirm in part, reverse in part, and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

Reserves is an entity created to administer and maintain The Reserves Resort Spa and Country Club, a planned residential community consisting of approximately 180 lots located in Sussex County, Delaware. On August 13, 2001, The Reserves Development Corporation [1]—an affiliate of Reserves and the record owner of the residential community—filed a Declaration of Restrictions containing covenants that imposed certain obligations on future lot

---

1. The Reserves Development Corporation is now known as The Reserves Resort Spa & Country Club LLC.

owners (the "Declaration"). Those obligations included periodic assessments that would be payable to Reserves.[2] Abraham Korotki is the sole owner and manager of Reserves and The Reserves Development Corporation. Korotki also controls another affiliate, Reserves Development LLC.

In April 2005, Reserves Development LLC, together with The Reserves Development Corporation, entered into a contract (the "Sale Agreement") to sell seventeen lots to R.T. Properties, LLC ("R.T. Properties") for $4,250,000. The Sale Agreement recited that R.T. Properties was "acquiring the Property in order to construct homes thereon for sale to the general public." In November 2005, R.T. Properties transferred all seventeen lots to four affiliated entities—Mountain Range, LLC, Fountain, LLC, Waterscape, LLC, and Wind Chop, LLC.[3] Three years later, in May 2008, Korotki caused the Declaration to be amended by adding, (among other things), a sewer connection assessment that obligated each lot owner to pay approximately $4,000 to Reserves.

On August 24, 2009, Reserves sent R.T. Properties an invoice for $517,778.01, representing outstanding assessments claimed to be due from all seventeen lots from their date of purchase. Thereafter, Reserves regularly sent R.T. Properties invoices for each additional quarterly assessment.

In September 2010, Reserves filed an action in the Superior Court against R.T. Properties to enforce the payment of the assessments allegedly due. In response, R.T. Properties moved to dismiss the complaint, claiming that under Paragraph 10 of the Sale Agreement, the payment of assessments for each lot was to be deferred until the lot was transferred to a third party homebuyer and a certificate of occupancy was issued. The Superior Court denied the motion to dismiss.

Thereafter, the parties cross-moved for summary judgment. In a bench ruling issued on February 27, 2013, the trial court granted summary judgment in favor of R.T. Properties with respect to all claimed assessments, except for the sewer connection assessments. The court concluded—on the basis of the Sale Agreement, the deposition testimony of Korotki,[4] and the parties' course of conduct—that Reserves had agreed to forbear from enforcing the claimed assessments on the lots until each lot was sold to a third party homebuyer and a certificate of occupancy was issued. That forbearance agreement,[5] the court concluded, afforded R.T. Properties a complete defense to the assessment claims.[6] By separate letter opinion issued

**2.** Article VII Section 1 relevantly provides that: "each Owner of any Lot or Condominium Unit ... hereby covenants and agrees to pay the Association: (1) annual assessments or charges; (2) liquidated damage assessments, if imposed ... (3) an initial assessment in the amount of Five Thousand Dollars ($5,000.00) due upon the conveyance of any Lot or Condominium Unit from the Declarant to a third party purchaser for value to help capitalize the Association ... and (4) included in the annual assessment shall be a maintenance element for the individual lots to cover landscaping maintenance and repair. ..."

**3.** R.T. Properties and the four affiliated entities are referred to collectively as "R.T. Prop-

erties." The lots were distributed among those four companies.

**4.** In his deposition, Korotki testified that "there was a forbearance of the assessments to take place upon the construction of single family homes on these lots." He went on to explain that the forbearance "applied to an initial assessment, a capital assessment, an annual assessment, and a quarterly assessment."

**5.** We refer to ·this alleged deferment as the "forbearance agreement."

**6.** Tr. of Decision on Cross Motions for Summary Judgment at 18, 23, 28, *The Reserves*

that same day, the court granted summary judgment in favor of R.T. Properties on the sewer connection assessment claim. In its letter opinion, the court concluded that, as applied to R.T. Properties, the sewer connection assessment was based on an invalid amendment to the Declaration of Restrictions, because R.T. Properties had purchased the lots before the Declaration was amended, at which time the Declaration made no reference to a sewer connection assessment.[7] Reserves has appealed from both adverse judgments.

## ANALYSIS

Reserves claims that the trial court erred by granting summary judgment in favor of R.T. Properties based on the forbearance agreement, and that summary judgment should have been granted in Reserves' favor, for five reasons. First, Reserves argues that the Sale Agreement, which the Superior Court found embodied the forbearance agreement, in fact contains no promise to forbear from collecting the assessments. Reserves' remaining four arguments are to the effect that even if the Sale Agreement contained or was subject to a forbearance condition, Reserves is still not legally required to forbear from collecting the assessments. Reserves also claims, that, at a minimum, the trial court improperly resolved disputed issues of material fact, and therefore the grant of summary judgment on the for-

bearance issue should be reversed and the case remanded for a trial.[8]

Reserves further argues that the Superior Court's grant of summary judgment on the sewer assessment claim should be reversed, on two alternative grounds. First, Reserves contends, the Superior Court erroneously awarded judgment to R.T. Properties, because in an earlier case the Superior Court had held that R.T. Properties was contractually obligated to pay the sewer assessments to Reserves Development LLC. Second, Reserves argues that the grant of summary judgment on the sewer assessment claim was improper because material facts were in dispute.

■■ We review a trial court decision on cross-motions for summary judgment *de novo* [9] "both as to the facts and the law to determine whether or not the undisputed material facts entitle [either] movant to judgment as a matter of law...." [10] A trial court's denial of summary judgment is given a high level of deference and is rarely disturbed.[11]

Pervading Reserves' claims are two core issues: (i) were the Superior Court's judgments based on disputed issues of material fact, and (ii) if not, which party (if any) is entitled to judgment as a matter of law? We address those issues, first in connection with the forbearance agreement de-

---

*Mgt., LLC v. R.T. Properties, LLC,* C.A. No. S10C–09–020 (Del.Super.Ct. Feb. 27, 2013). Because the sewer connection assessment was added to the Declaration of Restrictions after the Sale Agreement was executed, the court implicitly found that the forbearance agreement did not apply to the sewer charges.

**7.** *The Reserves Mgt., LLC v. R.T. Properties,* Del.Super., C.A. No. S10C–09–020, Bradley, J. (Feb. 27, 2013) (Letter Op.).

**8.** Reserves also claims that, with respect to the forbearance agreement, the Superior Court considered evidence not properly be-

fore the court on a motion for summary judgment. We reverse and remand this judgment on other grounds, making it unnecessary for us to address this argument.

**9.** *Telxon Corp. v. Meyerson,* 802 A.2d 257, 262 (Del.2002).

**10.** *Arnold v. Soc'y for Sav. Bancorp, Inc.,* 678 A.2d 533, 535 (Del.1996) (citing *Williams v. Geier,* 671 A.2d 1368, 1375 (Del.1996)).

**11.** *Telxon Corp.,* 802 A.2d at 262 (citing *Anglin v. Bergold,* 565 A.2d 279 (Del.1989)).

fense and then with respect to the sewer assessment claim.

## I. The Forbearance Agreement

■ We conclude that the trial court erred by granting summary judgment in favor of R.T. Properties on its forbearance agreement defense, because material facts are in dispute. The Superior Court interpreted Paragraph 10 of the Sale Agreement as containing a forbearance provision and, therefore, afforded R.T. Properties a complete defense as a matter of law. That was error, because Paragraph 10 addresses only the assessments payable by third party homebuyers after a certificate of occupancy has been issued. That provision does not contain an explicit agreement to forbear from collecting those assessments. Paragraph 10 may be consistent with an agreement to forbear, but it does not embody any such agreement.

However, the record does contain evidence—notably Korotki's deposition testimony—of an oral agreement to defer payment of the assessments on each lot until the lot (with a completed home) is sold to a third party buyer. That evidence is incomplete, in that it does not identify the specific parties to that agreement or the agreement's other terms and conditions, including its duration. Nonetheless, this evidence of the existence of an oral forbearance agreement, together with Paragraph 10 of the Declaration, is sufficient to create triable issues of material fact. On this basis we must reverse the Superior Court's judgment in favor of R.T. Properties and remand the case for a trial on the forbearance agreement issue.

Reserves claims that the Superior Court should have granted summary judgment in its favor on the ground that, as a matter of law, there was no legally valid forbearance agreement between the parties. This argument ignores the evidence of an oral forbearance agreement discussed immediately above. Accordingly, the trial court did not err by declining to grant judgment in Reserves' favor as a matter of law.

Second, Reserves argues that even if a forbearance agreement exists, it is not enforceable against Reserves, because neither Reserves nor the R.T. Properties affiliates were parties to the Sale Agreement. Therefore, summary judgment should have been granted to Reserves on that basis. That argument lacks merit. Although neither Reserves nor the affiliates were parties to the Sale Agreement, that does not necessarily establish that those entities were not parties to a separate oral agreement to forbear. That is an issue of fact that must be resolved at trial.

Third, Reserves argues that because R.T. Properties breached the Sale Agreement, Reserves is no longer bound by any separate forbearance agreement that the parties may have reached.[12] This argument fails, because the effect (if any) of a breach of the Sale Agreement (if any), is predicated upon facts that are not established in the present record.

■ Fourth, Reserves argues that because the Sale Agreement was not recorded with the Recorder of Deeds for Sussex County, any forbearance agreement lacks legal force.[13] The forbearance agreement, however, has not been shown to be part of, or otherwise contained in, the Sale Agreement, and Reserves cites no authority to support its claim that under Delaware law a forbearance agreement must be recorded to be enforceable. The Delaware recording statute provides that "[a] deed

12. Reserves claims that the R.T. Properties' failure to build any homes on the seventeen lots is a breach of the Sale Agreement.

13. 25 *Del. C.* § 153 (2009).

concerning lands or tenements shall have priority from the time that it is recorded...."[14] A deed is "[a]t common law, any written instrument that is signed, sealed, and delivered and that conveys some interest in property."[15] Forbearance is generally defined as "[t]he act of refraining from enforcing a right, obligation, or debt."[16] Even if the Sale Agreement were assumed to be a "deed," the forbearance agreement was not part of the Sale Agreement, nor did the former agreement convey any interest in property. Therefore, the forbearance agreement would not be subject to the recording statute.

■ Fifth, Reserves argues that because the forbearance agreement would indefinitely delay the vesting of the assessments, it violates the rule against perpetuities. Reserves cites no authority to support that argument, which in any event lacks merit. A restrictive covenant is a servitude,[17] and the rule against perpetuities does not apply to servitudes.[18]

We conclude that the Superior Court erred by granting summary judgment to R.T. Properties on the contractual forbearance issue, but committed no error in denying summary judgment to Reserves.

## II. The Sewer Assessment

■ We further conclude that the Superior Court's grant of summary judgment on the sewer connection assessment claim is correct as a matter of law. The Superior Court determined that the amendment authorizing the sewer connection assessment was not a valid amendment to the original Declaration, that would be enforceable against R.T. Properties.[19] Article VII Section 1 of the original Declaration identifies the various assessments for which property owners will be responsible. Nowhere does it include or mention a sewer connection assessment or authorize additional assessments to be imposed at a future time.[20] The Superior Court found no facts or circumstances that would support a conclusion that future buyers of the lots were on notice that they would be subject to a later-created "substantial monetary assessment like the sewer connection assessment."[21] Because the Superior Court's ruling was grounded on the unambiguous terms of the original Declaration, and not on triable fact issues, summary judgment was properly granted.

Reserves next claims that the Superior Court erred by granting summary judgment to R.T. Properties, because whether or not the sewer connection assessment

14. *Id.*

15. *Black's Law Dictionary* 475 (9th ed. 2009).

16. *Id.* at 717.

17. Restatement (Third) of Property: Servitudes § 1.1(2) (2000).

18. *Id.* § 3.3.

19. We assume without deciding that the reasonableness standard applied by the trial judge governs the issue, as neither party has challenged the application of the standard itself.

20. The Declaration contains only three references to amendments or changes. The first, in the Background section, refers to "future amendments or supplements." The second, in Article VII Section 3, provides that the *annual* assessment will be "fixed annually" and "periodically adjusted as needs for annual assessments arise." The third, in Article X Section 1, provides that "the Association may waive, abandon, terminate, modify, alter, change, amend, eliminate or add to these Restrictions and this Declaration," although the Declaration does not specify the procedure for amendment.

21. *The Reserves Mgt., LLC v. R.T. Properties*, Del.Super., C.A. No. S 10C–09–020, Bradley, J. (Feb. 27, 2013) (Letter Op.), at 2.

amendment was "reasonable" is a fact issue that must be resolved at trial. This claim fails, because if there were any disputed fact issues, they were not material. The Superior Court based its summary judgment ruling on undisputed material facts.

Finally, Reserves argues that a ruling by the Superior Court in a separate proceeding between Reserves Development LLC and R.T. Properties required that summary judgment be granted in Reserves' favor.[22] In that related case, the Superior Court held that R.T. Properties was contractually obligated to pay sewer connection fees to Reserves Development LLC at some future time.[23] This case, however, presents a different issue, namely, whether R.T. Properties had an obligation, arising out of the amended Declaration, to pay Reserves. The September 2011 case upon which Reserves relies did not address this separate issue. We conclude that the Superior Court did not err by granting summary judgment in favor of R.T. Properties.

### CONCLUSION

For the above reasons, the judgment of the Superior Court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this Opinion. Jurisdiction is not retained.

---

**22.** *Reserves Dev. LLC v. R.T Properties, L.L.C.,* 2011 WL 4639817 (Del.Super.Ct. Sept. 22, 2011).

**23.** *Id.* at *5–6.